PER CURIAM.
This is a dispute arising from the administration of two estates.
The trial court entered a judgment of $2,398.89 against the defendant, and she appeals. We affirm.
Plaintiffs are the heirs-at-law of one Dick Fryer, who died in 1948. Under the terms of Fryer’s will, his wife, Velma Fryer (who later remarried and became Velma Gilmore), was appointed executrix and directed to manage his estate. She was given the right to use all or any part of the corpus of the estate during her life, and the remainder was to go to Dick Fryer’s heirs and their descendants.
Velma Gilmore died in 1956, and defendant, her niece, was appointed co-executrix, along with another niece, of Mrs. Gilmore’s estate. Following Mrs. Gilmore’s death, one of the plaintiffs was appointed executor of the Fryer estate.
In 1957, plaintiffs instituted the present action against defendant and her co-executrix, both individually and in their capacity as co-executrices of the Gilmore estate. Plaintiffs claimed that Mrs. Gilmore had improperly commingled funds belonging to the Fryer estate with her personal funds and had appropriated those funds to prevent their going to the Fryer heirs. Plaintiffs also claimed that defendant and her co-executrix had conspired with Mrs. Gilmore and had themselves participated in the appropriation of funds belonging to the Fryer estate.
Much testimony was taken, and in 1961 the parties submitted the testimony and other evidence to the trial court for a final decision. For reasons which do not appear in the record, the trial court did not render a final decree until February 1985, over twenty-three years later.
The trial court found that defendant and her co-executrix, prior to the running of the nonclaim statute, had distributed to themselves, as beneficiaries under the Gilmore will, monies which belonged to the Fryer estate. A judgment in the amount of $2,398.89 was rendered against defendant. *1231 Her co-executrix was released from liability due to an out-of-court settlement with plaintiffs.
I
On appeal defendant argues that the trial court was without jurisdiction or authority to render a decree in 1985 due to the delay of over twenty-three years from the date the case was submitted for final decision and because the trial judge had retired from active service as a circuit judge.
In Baker v. Ingram, 380 So.2d 909 (Ala. Civ.App.1980), a delay of six years took place before the trial court rendered the final judgment which was appealed to this court. We noted then that there was no rule which, due to the six-year delay, rendered the “judgment void or per se prejudicial to a defendant.” Baker, 380 So.2d at 910. Although this court certainly does not approve of the twenty-three-year delay by the trial court in rendering its final decree, we know of no authority in this state which would require us to hold that such a delay in and of itself deprived the court of its authority or jurisdiction to render a final decision in the case.
The defendant argues, however, that it is not only the delay in rendering the final decree which deprived the trial court of its authority and jurisdiction over this matter but also the fact that, when the final decree was entered, the trial judge had retired and was no longer an “active” circuit judge.
Section 12-2-30(b)(l) of the Alabama Code of 1975 authorizes the Chief Justice of the Alabama Supreme Court to appoint retired circuit judges to hear cases or undertake other duties. Defendant argues that there was no order by the Chief Justice which would give the retired trial judge the authority and jurisdiction to enter a final decision in the present case.
The record itself is silent on this matter. This court, however, has knowledge that there are two orders of the Alabama Supreme Court, signed by Chief Justice Howell Heflin, which assigned the instant trial judge, who retired in 1976, to temporary duty to handle all cases which he might be called upon to undertake. This court may take judicial notice of such orders by the Alabama Supreme Court which affect the authority of a judge to sit in a circuit of this state. See Ex parte Bush, 270 Ala. 62, 116 So.2d 382 (1959); Blackwell v. Austin, 36 Ala.App. 70, 52 So.2d 168 (Ct.App.1951). Accordingly, we find that the trial judge had full authority to render the final decision in this case.
Defendant additionally argues that the extreme delay and the trial judge’s retirement from active duty status were prejudicial to her. Such an argument is weak, however, because defendant never claimed such prejudice until after the final decree had been rendered against her. In other words, defendant gambled during the twenty-three years after the case had been submitted to the trial court that the final decision would be favorable to her. When it was not, she- claimed she was prejudiced. Under these circumstances, we view her claims of prejudice to be of little merit.
II
Defendant also contends on appeal that plaintiffs’ suit is barred by the statute of nonclaim, Ala. Code (1975), § 43-2-350, which limits the time for filing claims against a decedent’s estate to six months following the issuance of letters testamentary. Essentially, defendant argues that plaintiffs’ suit is against the Gilmore estate for Mrs. Gilmore’s commingling and appropriation of monies of the Fryer estate when she was acting as executrix of that estate. Because plaintiffs did not institute the present suit until approximately a year after defendant was issued letters testamentary for the Gilmore estate, defendant argues that the suit is barred by the statute of nonclaim.
We agree with defendant that such cases as Marks v. Brightwell, 269 Ala. 506, 114 So.2d 268 (1959), and Cook v. Castleberry, 233 Ala. 650, 173 So. 1 (1937), support her argument that a suit for the appropriation of funds by an executor or administrator *1232 who has died must be brought against the estate of the executor or administrator within the nonclaim period.
Defendant, through able counsel, ignores, however, the fact that plaintiffs did not merely bring suit against her as co-executrix of the Gilmore estate. Defendant was also sued in her individual capacity for allegedly conspiring with Mrs. Gilmore and appropriating funds herself. Wé know of no authority, and none is cited to us by defendant, which would require such a suit against defendant individually to have been brought within six months of the date she was appointed co-executrix of the Gilmore estate. Accordingly, defendant’s argument based upon the nonclaim statute must fail.
Ill
Defendant’s final argument is that the judgment against her is not supported by the evidence. We do not agree.
The defendant’s co-executrix testified that she and the defendant closed out Mrs. Gilmore’s checking and savings accounts in September 1956, approximately three months after they received their letters testamentary, and that, after paying certain expenses, they divided the balance of the monies in these accounts between themselves. There was also testimony from which the trial court could reasonably conclude that the monies in those accounts were derived from sums due the Fryer estate, such as monthly payments made to Mrs. Gilmore in payment of certain loans her deceased husband had made.
The evidence supports the trial court’s conclusion that funds in Mrs. Gilmore’s checking and savings accounts were owed to the Fryer estate and that defendant and her co-executrix had improperly distributed those funds to themselves.
The case is due to be and is affirmed.
AFFIRMED.
All the Judges concur.