Rel: December 16, 2022

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**. Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is published in **Southern Reporter**.

# Alabama Court of Criminal Appeals

## OCTOBER TERM, 2022-2023

_____

### CR-21-0374

_____

### Raphiel Pier Quinnie

### v.

### State of Alabama

### Appeal from Mobile Circuit Court
### (CC-17-1890)

McCOOL, Judge.

Raphiel Pier Quinnie appeals his conviction for unlawful possession of a short-barreled shotgun, a violation of § 13A-11-63, Ala. Code 1975. Quinnie was sentenced to two years' imprisonment for that conviction.

Facts and Procedural History

In May 2016, a Mobile County grand jury indicted Quinnie for murder. Quinnie was arrested for the murder charge on July 12, 2016, and it appears that he was in possession of a short-barreled shotgun at that time (R. 21), which was not the murder weapon. In April 2017, a Mobile County grand jury also indicted Quinnie for unlawful possession of a short-barreled shotgun, and Quinnie was arraigned on that charge on June 27, 2017.

In January 2018, Quinnie was convicted of murder and, on March 1, 2018, was sentenced to life imprisonment. At the conclusion of the sentencing hearing, Quinnie provided oral notice of appeal, and the State requested that the unlawful-possession-of-a-short-barreled-shotgun charge "be moved to the administrative docket." (CR-17-0573, R. 364.) Quinnie raised no objection to the State's request (id.), so the circuit court granted the request and "transferred [that charge] to the administrative docket pending appeal [of Quinnie's murder conviction]." (C. 22.) In April 2019, this Court affirmed Quinnie's murder conviction, and the Alabama Supreme Court denied certiorari review on July 12, 2019. For all that appears in the record, Quinnie's unlawful-possession-of-a-short-barreled-shotgun charge remained on the circuit court's administrative

docket until May 2021, when the court sua sponte scheduled a status conference regarding that charge.

On August 24, 2021, Quinnie filed a motion to dismiss the unlawful-possession-of-a-short-barreled-shotgun charge on the basis that the State had violated his constitutional right to a speedy trial. See U.S. Const., Amend. VI.; and Ala. Const., Art. I, § 6. The State filed a response to Quinnie's motion, arguing that the motion was due to be denied based on an analysis of the four factors set forth in Barker v. Wingo, 407 U.S. 514 (1972). Quinnie then supplemented his motion with a brief in which he also addressed the Barker factors, arguing that the factors weighed in favor of dismissal. The circuit court held a hearing on Quinnie's motion and, following that hearing, issued an order denying the motion "in light of the Barker factors as applied to the facts of this case." (C. 50.)

On February 8, 2022, Quinnie pleaded guilty to unlawful possession of a short-barreled shotgun after reserving his right to appeal the circuit court's denial of his motion to dismiss.

## Discussion

On appeal, Quinnie reasserts his claim that the State violated his constitutional right to a speedy trial. We review this claim de novo

because the relevant facts are undisputed and because the only question to be decided is a question of law. Horton v. State, [Ms. CR-20-0502, Mar. 11, 2022] ___ So. 3d ___, ___ (Ala. Crim. App. 2022).

> "'In determining whether a defendant has been denied his constitutional right to a speedy trial, we apply the test established by the United States Supreme Court in Barker v. Wingo, 407 U.S. 514, 92 S. Ct. 2182, 33 L. Ed. 2d 101 (1972), in which the following four factors are considered: (1) the length of the delay; (2) the reasons for the delay; (3) the defendant's assertion of his or her right to a speedy trial; and (4) the prejudice to the defendant.
>
> "'In Ex parte Walker, 928 So. 2d 259, 263 (Ala. 2005), the Alabama Supreme Court stated:
>
>> "'"'A single factor is not necessarily determinative, because this is a "balancing test, in which the conduct of both the prosecution and the defense are weighed."' Ex parte Clopton, 656 So. 2d [1243] at 1245 [(Ala. 1985)] (quoting Barker, 407 U.S. at 530)."'
>
> "State v. Jones, 35 So. 3d 644, 646 (Ala. Crim. App. 2009)."

Horton, ___ So. 3d at ___.

## I. Length of the Delay

Under the first Barker factor, the threshold inquiry is whether the length of the delay is "presumptively prejudicial," which, if it is,

"'triggers' an examination of the remaining three <u>Barker</u> factors." <u>Horton</u>, ___ So. 3d at ___. "'[A]s the term is used in this threshold context, "presumptive prejudice" does not necessarily indicate a statistical probability of prejudice; it simply marks the point at which courts deem the delay unreasonable enough to trigger the <u>Barker</u> enquiry.'" <u>Horton</u>, ___ So. 3d at ___ (quoting <u>Doggett v. United States</u>, 505 U.S. 647, 652 n.1 (1992)).

> "'"In Alabama, '[t]he length of delay is measured from the date of the indictment or the date of the issuance of an arrest warrant – whichever is earlier – to the date of the trial.' <u>Roberson [v. State]</u>, 864 So. 2d [379,] 394 [(Ala. Crim. App. 2002)]."'
>
> "<u>Wilson v. State</u>, 329 So. 3d 71, 77 (Ala. Crim. App. 2020) (quoting <u>Ex parte Walker</u>, 928 So. 2d 259, 263-64 (Ala. 2005)). In a case where the defendant pleads guilty, the 'trial' date is the date he or she pleads guilty. <u>See</u> <u>Wilson</u>, 329 So. 3d at 77; and <u>Ex parte Walker</u>, 928 So. 2d 259, 264 (Ala. 2005) (both calculating the length of the delay up to the date the defendant pleaded guilty)."

<u>Horton</u>, ___ So. 3d at ___.

In this case, Quinnie was arrested in July 2016 but was not indicted until April 2017. Thus, we measure the delay from the date of Quinnie's arrest to the date he pleaded guilty, i.e., from July 12, 2016, to February

5

8, 2022, which is a delay of approximately 67 months.[1] The State concedes that this delay is sufficient to trigger an analysis of the remaining <u>Barker</u> factors, and that concession is supported by Alabama caselaw. <u>See</u> <u>Horton</u>, ___ So. 3d at ___ (holding that a delay of 54 months was sufficient to trigger an analysis of the remaining <u>Barker</u> factors). That fact also means that this factor weighs against the State in our speedy-trial analysis; the degree to which it weighs against the State we discuss below.

## II. Reason for the Delay

> "'"<u>Barker</u> recognizes three categories of reasons for delay: (1) deliberate delay, (2) negligent delay, and (3) justified delay. 407 U.S. at 531, 92 S. Ct. 2182. Courts assign different weight to different reasons for delay. Deliberate delay is 'weighted heavily' against the State. 407 U.S. at 531, 92 S. Ct. 2182. Deliberate delay includes an 'attempt to delay the trial in order to hamper the defense' or '"to gain some tactical advantage over (defendants) or to harass them."' 407 U.S. at 531 & n.32, 92 S. Ct. 2182 (quoting <u>United States v.</u>

---

[1]Both Quinnie and the State contend that the length of the delay is 62 months because they incorrectly conclude that the delay ended on September 28, 2021 – the date of the hearing on Quinnie's motion to dismiss. As Quinnie notes, it is true that, in <u>State v. Stovall</u>, 947 So. 2d 1149, 1153 (Ala. Crim. App. 2006), this Court held that the length of the delay was measured to "the date the trial court conducted the hearing on [the defendant's] motion to dismiss." However, in that case the circuit court had granted the defendant's motion to dismiss, and, thus, when this Court considered the State's appeal, there was no trial date to which the delay could be measured.

Marion, 404 U.S. 307, 325, 92 S. Ct. 455, 30 L. Ed. 2d 468 (1971)). Negligent delay is weighted less heavily against the State than is deliberate delay. Barker, 407 U.S. at 531, 92 S. Ct. 2182; Ex parte Carrell, 565 So. 2d [104,] 108 [(Ala. 1990)]. Justified delay – which includes such occurrences as missing witnesses or delay for which the defendant is primarily responsible – is not weighted against the State. Barker, 407 U.S. at 531, 92 S. Ct. 2182[.]"'"

Horton, ___ So. 3d at ___ (quoting Wilson v. State, 329 So. 3d 71, 77-78 (Ala. Crim. App. 2020), quoting in turn Ex parte Walker, 928 So. 2d 259, 265 (Ala. 2005)).

In this case, Quinnie argues that the State's delay in prosecuting him was in part deliberate and in part negligent, but he also concedes that some of the delay was "not specifically attributable to either party." (Quinnie's brief, p. 17.) According to Quinnie, the delay can be separated into four blocks of time, which he separates and categorizes as follows:

1. The delay that occurred from the date of his arrest to the date of his arraignment was negligent delay by the State.

2. The delay that occurred from the date of his arraignment to the date his murder trial concluded was "not specifically attributable to either party." According to Quinnie, this is so because both he and the State "were primarily focused during this time on preparing for and completing the trial and sentencing in the murder case." (Quinnie's brief, p. 18.)

3. The delay that occurred from the date his murder trial concluded, when the State requested that this case be

7

placed on the administrative docket, to the date the Alabama Supreme Court denied certiorari review of his murder conviction was deliberate delay by the State.

4. The delay that occurred after the Alabama Supreme Court denied certiorari review of his murder conviction was negligent delay by the State.

We first note that this Court has held that a period of delay "'cannot be charged against the [S]tate as needless delay'" when that period is "spent in clearing up … other pending charges." Goodson v. State, 588 So. 2d 509, 511 (Ala. Crim. App. 1991) (quoting Kimberly v. State, 501 So. 2d 534, 536 (Ala. Crim. App. 1986)). See also McGregor v. State, 394 S.W.3d 90, 114 (Tex. Crim. App. 2012) ("The fact that the defendant is being prosecuted on other charges constitutes a valid reason for a delay in bringing him to trial on the charged offense at issue."). Here, from the date of Quinnie's arrest through March 1, 2018, the State was actively prosecuting Quinnie for the more serious and unrelated charge of murder. Thus, none of that delay – a delay of approximately 19 and one-half months – is held against the State.

Next, we disagree with Quinnie's allegation that the State deliberately delayed this case during the time that the appeal of his murder conviction was pending, i.e., from March 1, 2018, to July 12, 2019.

It is true, as Quinnie notes, that this delay occurred as a result of the State's "volitional act" of requesting that the unlawful-possession-of-a-short-barreled-shotgun charge be placed on the circuit court's administrative docket. (Quinnie's brief, p. 18.) However, there is no indication, nor does Quinnie allege, that the State made that request for the purpose of "attempt[ing] to delay the trial in order to hamper the defense" or "to gain some tactical advantage over [Quinnie] or to harass [him]." Horton, ___ So. 3d at ___ (citations omitted). To the contrary, Quinnie conceded at the speedy-trial hearing that the appeal of his murder conviction was "what prompted [the unlawful-possession-of-a-short-barreled-shotgun charge] to go to the admin[istrative] docket" (R. 4), and Quinnie did not object to moving that charge to the administrative docket. Thus, any delay attributable to the State from March 1, 2018, to July 12, 2019 – a delay of a little more than 16 months – was negligent delay. See State v. Ramirez, 184 So. 3d 1053, 1057 (Ala. Crim. App. 2014) (holding that the State had negligently delayed the defendant's trial when it "failed to proceed with the prosecution while the case remained on the circuit court's administrative docket").

According to Quinnie, the remaining delay of 31 months, which occurred from July 12, 2019, to February 8, 2022, was also attributable to the State's negligence. However, as the State notes, "jury trials [in Alabama] were suspended from March 13, 2020, to September 14, 2020," due to the COVID-19 pandemic. Ex parte Brown, [Ms. 1210172, June 17, 2022] ___ So. 3d ___, ___ (Ala. 2022). Thus, the State was unable to bring Quinnie to trial during that six-month period, and, as a result, those six months are not held against the State. See State v. Paige, 977 N.W.2d 829, 838 (Minn. 2022) (holding that "trial delays due to the statewide orders issued in response to the COVID-19 global pandemic do not weigh against the State"); People v. Mayfield, 186 N.E.3d 571, 575 (Ill. Ct. App. 2021) (holding that the Illinois Supreme Court's orders suspending jury trials as a result of the COVID-19 pandemic "tolled the speedy-trial term"); Ali v. Commonwealth, 872 S.E.2d 662, 676 (Va. Ct. App. 2022) (holding that the trial court "did not err by declining to weigh the [COVID-19] pandemic-related delay in the appellant's favor" because "the delay due to the pandemic was valid, unavoidable, and outside the Commonwealth's control"); State ex rel. Porter v. Farrell, 245 W. Va. 272, 283, 858 S.E.2d 897, 908 (2021) (holding that the time "during which a

judicial emergency has been declared in response to the COVID-19 global pandemic" is not held against the State in a speedy-trial analysis); Labbee v. State, 362 Ga. App. 558, 567, 869 S.E.2d 520, 530 (2022) (holding that the trial court did not err "in finding that the delay in [the defendant's] trial resulting from the [COVID-19] pandemic was a neutral factor that should not be weighed negatively against the State" and noting that "several other courts that have considered the delay caused by the pandemic in the context of speedy trial claims … have declined to weigh the delay against the government"); and Ward v. State, 346 So. 3d 868, 871-72 (Miss. 2022) (holding that "delays caused by the COVID-19 pandemic are neutral" in a speedy-trial analysis).

After excluding the 6 months during which jury trials were suspended in Alabama, what is left of the delay that occurred from July 12, 2019, to February 8, 2022, is a period of 25 months. In neither its arguments at the speedy-trial hearing nor in its brief to this Court has the State offered an explanation for its failure to bring Quinnie to trial during those 25 months, and the State conceded below that there had been some negligent delay during the time that this case was on the

11

circuit court's administrative docket. (C. 40-41; R. 7.) Thus, we attribute that 25-month delay to the State's negligence.

In short, this case involves no deliberate delay by the State, and only approximately 41 months of the 67-month delay can be attributed to the State's negligence. Although a negligent delay of 41 months means that the first and second <u>Barker</u> factors weigh against the State, they do not weigh heavily against the State. <u>See</u> <u>Horton</u>, ___ So. 3d at ___ ("The fact that the State negligently delayed [the defendant's] case for 43 months weighs against the State, but it 'does not weigh as heavily as it would have had the delay been found to be ... intentional.' " (quoting <u>State v. White</u>, 962 So. 2d 897, 902 (Ala. Crim. App. 2006))); and <u>United States v. Serna-Villarreal</u>, 352 F.3d 225, 232 (5th Cir. 2003) (holding that the first and second <u>Barker</u> factors did not weigh heavily against the State in a case involving a negligent delay of 42 months).[2]

_____

[2]In his reply brief, Quinnie argues that this Court should attribute all of the 31-month delay that occurred from July 12, 2019, to February 8, 2022, to the State's negligence. This is so, Quinnie argues, because there is nothing in the record to indicate that jury trials were suspended during part of that time. However, Alabama's intermediate appellate courts may take judicial notice of orders issued by the Alabama Supreme Court. <u>Kettler v. Fryer</u>, 480 So. 2d 1229, 1231 (Ala. Civ. App. 1985). Furthermore, even if we attributed all of this 31-month delay to the State's negligence, the result would be that an additional 6 months would

12

### III. Quinnie's Assertion of His Right to a Speedy Trial

> "'"An accused does not waive the right to a speedy trial simply by failing to assert it. <u>Barker</u>, 407 U.S. at 528, 92, 92 S. Ct. 2182. Even so, courts applying the <u>Barker</u> factors are to consider in the weighing process whether and when the accused asserts the right to a speedy trial, 407 U.S. at 528-29, 92 S. Ct. 2182[.]"'"

<u>Horton</u>, ___ So. 3d at ___ (quoting <u>Wilson</u>, 329 So. 3d at 79), quoting in turn <u>Ex parte Walker</u>, 928 So. 2d at 265-66).

In this case, it is undisputed that Quinnie first asserted his right to a speedy trial on August 24, 2021 – more than five years after he was arrested. <u>See</u> <u>Horton</u>, ___ So. 3d at ___ (noting that "the right to a speedy trial attaches on either the date the indictment is returned or the date the defendant is arrested, whichever is earlier" (emphasis omitted)). And, even if we ignore the time that Quinnie was being prosecuted for murder, Quinnie still waited more than three years after his murder trial concluded to assert that right. Quinnie's failure to assert his right sooner "'"tends to suggest that he … acquiesced in the delays,"'" <u>Wilson</u>, 329 So. 3d at 79 (quoting <u>Ex parte Walker</u>, 928 So. 2d at 266), quoting in turn

---

be thus attributed to the State. Those additional six months would not change our conclusion that, although the first and second <u>Barker</u> factors weigh against the State, they do not weigh heavily against the State.

Benefield v. State, 726 So. 2d 286, 291 (Ala. Crim. App. 1997)), which means that the third Barker factor weighs against him, and weighs heavily, in our speedy-trial analysis. As the United States Court of Appeals for the Eleventh Circuit has explained: "'The Speedy Trial Clause primarily protects those who assert their rights, not those who acquiesce in the delay,'" and "[a]cquiescence in delay causes the third [Barker] factor … '[to] be weighed heavily against [the defendant].'" United States v. Lamar, 562 F. App'x 802, 806 (11th Cir. 2014) (quoting, respectively, United States v. Aguirre, 994 F.2d 1454, 1457 (9th Cir. 1993)), and Doggett, 505 U.S. at 653). See also Arnett v. State, 551 So. 2d 1158, 1160 (Ala. Crim. App. 1989) (holding that "the fact that [the defendant] waited over one year to assert his [speedy-trial] rights weigh[ed] heavily against him").

We acknowledge Quinnie's argument that the third Barker factor "is neutral" and should "not … be weighed against either party." (Quinnie's brief, p. 25.) However, the only support Quinnie provides for that argument is that he "was not responsible for missing any court dates," that he "never requested a continuance," and that he "assert[ed] his right to a speedy trial … prior to any trial setting." (Id. at 24.) Those

14

contentions might be true, but none of them provide an explanation for why Quinnie could not have asserted his right to a speedy trial at an earlier date.

## IV. Prejudice to Quinnie

In our analysis of the fourth <u>Barker</u> factor, we must first determine whether prejudice to Quinnie is to be presumed from the State's negligent delay or whether he has the burden of demonstrating actual prejudice. <u>Horton</u>, ___ So. 3d at ___. Regarding the circumstances that will support a finding of presumed prejudice in cases involving negligent delay, this Court has stated:

> "'"'[N]egligent delay may be so lengthy – or the first three <u>Barker</u> factors may weigh so heavily in the accused's favor – that the accused becomes entitled to a finding of presumed prejudice.'"' <u>Wilson [v. State]</u>, 329 So. 3d [71,] 80 [(Ala. Crim. App. 2020)] (quoting [<u>State v.] Pylant</u>, 214 So. 3d [392,] 397-98 [(Ala. Crim. App. 2016)], quoting in turn <u>Ex parte Walker</u>, 928 So. 2d [259,] 268 [(Ala. 2005)]). Although there is no '"bright-line rule for the length of delay caused by governmental negligence that will warrant a finding of presumed prejudice,"' the Alabama Supreme Court has noted that federal courts generally do not presume prejudice under the fourth <u>Barker</u> factor unless the delay is at least five years. [<u>State v.] Jones</u>, 35 So. 3d [644,] 656 [(Ala. Crim. App. 2009)] (quoting <u>Ex parte Walker</u>, 928 So. 2d at 270)."

<u>Horton</u>, ___ So. 3d at ___ (footnote omitted).

15

In this case, the State negligently delayed prosecuting Quinnie for approximately 41 months, which is less than the five-year threshold at which federal courts will sometimes presume prejudice. In addition, the first three Barker factors do not weigh heavily in Quinnie's favor; in fact, the third Barker factor – the assertion of his right to a speedy trial – weighs heavily against Quinnie. Thus, Quinnie is not entitled to a presumption of prejudice. See Horton, ___ So. 3d at ___ (holding that the defendant was not entitled to a presumption of prejudice because the negligent delay of 43 months was less than five years and because the first three Barker factors did not weigh heavily in his favor). Because we do not presume prejudice in this case, Quinnie has the burden of demonstrating that he suffered some actual prejudice from the delay. See Horton, ___ So. 3d at ___ (holding that, because the defendant was not entitled to a presumption of prejudice, he "had the burden of demonstrating actual prejudice"); and State v. Crandle, [Ms. CR-20-0148, May 6, 2022] ___ So. 3d ___, ___ (Ala. Crim. App. 2022) (same). However, Quinnie has made no attempt on appeal to demonstrate that he suffered any actual prejudice from the delay, choosing instead to place all of his proverbial eggs into the presumed-prejudice basket. (Quinnie's brief, pp.

16

25-28.) Accordingly, because Quinnie is not entitled to a presumption of prejudice and has not demonstrated that he suffered any actual prejudice, the fourth Barker factor weighs against him in our speedy-trial analysis.[3]

Conclusion

In this case, the State negligently delayed prosecuting Quinnie for approximately 41 months, so the first and second Barker factors weigh against the State but do not weigh heavily against it. However, the third

---

[3]We recognize that Quinnie made the following argument in the brief he filed in the circuit court:

"Quinnie should not have to show any actual, specific prejudice to him. However, he can – as an inmate in the Department of Corrections, he is excluded from any programs offered if he has pending charges. Therefore, he would not be allowed to take any substance abuse programs, any job training or educational classes, anything at all to better himself while incarcerated. Additionally, Quinnie's eligibility for good time, incentive time, and parole are all affected by having pending charges. These detriments, in addition to the damage to his defense in this case for all the typical reasons when there has been a delay (faded memory, lost witnesses, etc.), are actual, specific prejudice he has suffered due to the State failing to timely prosecute this case."

(C. 48.) However, Quinnie has not raised these arguments on appeal and has thus waived them. Douglas v. Roper, [Ms. 1200503, June 24, 2022] ___ So. 3d ___, ___ (Ala. 2022).

<u>Barker</u> factor weighs heavily against Quinnie because he acquiesced in the delay for more than three years, and the fourth <u>Barker</u> factor weighs against him because he is not entitled to a presumption of prejudice and he has made no attempt to demonstrate that he suffered any actual prejudice. "'Obviously, in this balancing [of the <u>Barker</u> factors], the less prejudice [an accused] experiences, the less likely it is that a denial of a speedy trial right will be found.'" <u>State v. Jones</u>, 35 So. 3d 644, 659 (Ala. Crim. App. 2009) (quoting <u>Serna-Villarreal</u>, 352 F.3d at 2300). Thus, after careful consideration of the <u>Barker</u> factors, we hold that Quinnie's right to a speedy trial was not violated. Accordingly, the judgment of the circuit court is affirmed.

AFFIRMED.

Kellum, Cole, and Minor, JJ., concur. Windom, P.J., recuses herself.